Manuel Seoane San Martín, demandante y apelante, *v.* Fernando J. Cortés y Angel Cortés, demandados y apelados.

No. 4661.—*Visto:* Julio 2, 1928. *Resuelto:* Noviembre 28, 1928.

*F. Soto Gras,* abogado del apelante; *Frazer & Castro Fernández,* abogado del apelado F. J. Cortés; *J. Martínez Dávila,* abogado del apelado Angel Cortés.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Se solicita la desestimación de este recurso por no haberse notificado en tiempo el escrito de apelación a uno de los demandados apelados.

Manuel Seoane San Martín demandó a Fernando J. Cortés y a Angel C. Cortés en solicitud de que se declarara que cierta venta aparentemente hecha por el primero al segundo jamás había existido, debiéndose su simulación al propósito de defraudar al demandante, acreedor legítimo del demandado Fernando J. Cortés.

Los demandados contestaron separadamente oponiendo a las alegaciones de la demanda la existencia y verdad de la transacción y negando el fraude. Ambos comparecieron por medio de los abogados Frazer y Castro Fernández.

Al celebrarse el juicio ocurrió lo que sigue:

"El día 8 de febrero de 1927, se llamó este caso para juicio, compareciendo el demandante por su abogado F. Soto Gras, y los demandados Fernando J. Cortés y Angel C. Cortés, por sus abogados Castro Fernández y José Martínez Dávila, respectivamente.

"Dmdo.—Lcdo. Castro:—En este caso son dos los demandados, Fernando J. Cortés y Angel C. Cortés, y quiero exponer a la Corte que solamente represento al demandado Fernando J. Cortés, y que el demandado Angel C. Cortés estará representado por el compañero José Martínez Dávila.

"Dte.—La contestación del otro demandado, Angel C. Cortés, está presentada y suscrita, como abogado de récord, por el Lcdo. Frazer y el Lcdo. Castro, y no ha habido ninguna moción oficial de substitución ni notificación al cliente de esa sustitución; por lo tanto no me parece que sea la forma adecuada para una substitución. Yo, por mi parte, no tengo inconveniente ninguno, porque no me va ni me viene quién represente a este demandado, pero no parece que sea la manera formal, porque si mi colega representa al otro, ¿con qué derecho él sugiere una sustitución? Ni siquiera el abogado que va a representar a Angel C. Cortés ha dicho nada.

"Dmdo.—Lcdo. Martínez Dávila:—Represento a Angel C. Cortés y vamos a hacer las defensas completamente separadas del otro demandado, sosteniendo las alegaciones de la contestación.

"Dmdo.—Lcdo. Castro:—Si quiere lo puedo hacer en forma de moción: que se me dé por retirado de la representación de Angel C. Cortés, por estar representado en este acto por el compañero José Martínez Dávila.

"Dte.—¿Es a nombre de Frazer también?

"Dmdo.—Lcdo. Castro:—Sí, señor.

"Juez:—Entonces se tiene por retirado al abogado Frazer y Castro Fernández de la representación de Angel C. Cortés, compareciendo el abogado Martínez Dávila como abogado de este demandado."

El 7 de septiembre de 1927 la corte de distrito dictó sentencia declarando la demanda sin lugar. La sentencia se basa en una cuidadosa opinión en la que después de reconocer la corte la presunción de fraudulenta que la venta tenía de acuerdo con los hechos y la jurisprudencia establecida en el caso de *Santini Fertilizer Co.* v. *Burgos*, 34 D.P.R. 869, estima, a virtud del análisis que hace de la prueba, que dicha

presunción fué destruida por ésta, y, que el contrato existió, celebrándose legalmente y no en fraude del acreedor demandante.

En la sentencia se expresa que los demandados comparecieron por sus abogados R. Castro Fernández y José Martínez Dávila. También aparece igual constancia en la minuta del secretario correspondiente al 8 de febrero de 1927, copia de la cual el propio día se unió al récord del caso. En la carátula de éste figuran como abogados de récord de los demandados O. B. Frazer, R. Castro Fernández y José Martínez Dávila.

No conforme el demandante, apeló de la sentencia de 7 de septiembre de 1927 notificádale el 8 de septiembre de 1927, notificando su escrito al secretario de la corte y al abogado R. Castro Fernández y radicando la notificación en secretaría el 6 de octubre de 1927.

Así las cosas, el 13 de octubre de 1927 el abogado Castro Fernández presentó un escrito jurado titulado "Aclaración de notificación" que en lo pertinente dice:

"Que el día 6 de octubre 1927 al regresar a su oficina encontró encima de su escritorio un escrito de apelación en el presente caso, el cual examinó muy a la ligera y guardó la misma en el *file* correspondiente; que en el día de hoy se le ha llamado la atención al hecho de que la notificación de dicho escrito es algo obscuro e incierto puesto que si bien es cierto que el escrito de apelación está dirigido 'Al Secretario de la Corte, y al abogado R. Castro Fernández', la taquígrafa del deponente al aceptar la notificación de dicho escrito y al firmar el mismo en mi nombre no se fijó que debajo de donde estaba firmando decía 'Abogados de los Demandados'; que desde el día del juicio y según se hizo constar al empezar la vista del mismo, cesó por completo la autorización del deponente y del Ledo. O. B. Frazer como abogados del demandado Angel C. Cortés quien días antes había nombrado su único y exclusivo abogado al Ledo. José Martínez Dávila, de todo lo que tiene amplio conocimiento el abogado del demandante Ledo. Francisco Soto Gras; que como el deponente no tiene autorización alguna en esta fecha ni en ninguna fecha posterior a la de la celebración del juicio para representarle y darse por notificado a nombre del demandado, Angel

C. Cortés; y para aclarar cualquier duda que pueda existir sobre el alcance de la notificación del escrito de apelación, el deponente hace constar bajo juramento que su taquígrafa no estaba autorizada como no lo está autorizado él ni Mr. Frazer para aceptar notificaciones a nombre de otra persona que del demandado, Fernando J. Cortés.''

El apelante entonces, el 15 de octubre, 1927, notificó la apelación al abogado Martínez Dávila, así:

''El abogado que suscribe a nombre y en representación del abogado F. Soto Gras, representante de la parte demandante en el caso de, epígrafe, habiendo sido notificado con fecha 11 de octubre de 1927, de que usted representa al demandado Angel C. Cortés, por la presente se le notifica de que con fecha 6 de octubre de 1927 fué radicado un escrito de apelación por la parte demandante por no estar ésta conforme con la sentencia dictada en 7 de septiembre de 1927 y notificada el día 8 de septiembre de 1927.—San Juan, P. R., octubre 15, 1927.—(Fdo.) F. Soto Gras.—R. Díaz Collazo, abogado del demandante.—Notificado con copia oct. 15 de 1927.—(Fdo.) José Martínez Dávila.—Radicado (filed) oct. 17, 1927.—Luis Vergne Ortiz, Sec.''

Con esos antecedentes como base, se presentó una moción de desestimación por el demandado Angel C. Cortés por medio de su abogado J. Martínez Dávila que fué impugnada por el apelante y que dió lugar a un amplio debate entre las partes el día de la vista.

Que Ángel C. Cortés fué un demandado en el pleito y que es parte necesaria en la apelación, surge de modo evidente de los hechos. Y que cuando finalmente notificado de la interposición del recurso en la persona de su abogado, había transcurrido el término de ley, también surge de modo evidente de los hechos.

Siendo ello así, la desestimación solicitada se impone como consecuencia inevitable de acuerdo con la ley y la repetida jurisprudencia de este tribunal.

Pero el apelante sostiene que no procede la desestimación porque el demandado Angel C. Cortés quedó notificado cuando el escrito lo fué al abogado Castro Fernández que continuó

siendo él abogado de récord de ambos demandados, ya que nunca fué sustituido legalmente por el otro abogado Martínez Dávila cuya intervención se limitó a la vista del pleito. Llama la atención el apelante a que debajo de la firma de Castro al darse por notificado aparecen las siguientes palabras: "Abogados de los demandados." También se hace mérito de la intervención del Sr. Díaz Collazo como abogado del demandante al tiempo de la apelación en ausencia del Sr. Soto Gras que fué el que compareció a la vista del pleito y del hecho de no constar según él del récord del caso la sustitución de Castro por Martínez como abogado de A. C. Cortés. Finalmente, invocando la jurisprudencia establecida en el caso de *Moyle* v. *Landers,* 78 Cal. 99, sostiene el apelante que la conducta observada por el abogado de los demandados al valerse de sus propias deficiencias para tratar de destruir el derecho del demandante, exige que su moción sea declarada sin lugar.

En primer término diremos que dada la explicación del abogado Castro en su "Aclaración de notificación," las palabras en maquinilla puestas por el propio apelante al preparar el escrito de notificación, si se llega a la conclusión de que hubo una sustitución de abogado en el acto de la vista, no tienen importancia decisiva. El nervio de la cuestión a decidir está en si en efecto a partir del juicio un nuevo abogado, Martínez Dávila, se encargó o no de defender los derechos del demandado A. C. Cortés cesando el antiguo, Castro, en su representación.

Para sostener que la sustitución no se hizo en forma y que Martínez no puede considerarse como el abogado de récord, invoca el apelante las reglas 25 y 26 de las que gobiernan la tramitación de los asuntos en las Cortes de Distrito de la Isla y que dicen así:

"Regla 25.—El abogado que primeramente haya sido ocupado en el pleito, se considerará como el que lleva la representación en el mismo y cuando esté presente tendrá la dirección del pleito, a me-

nos que se haga un cambio por la parte interesada y conste en el récord.

"Regla 26.—Un abogado de récord es aquel que ha comparecido en el pleito, y se entenderá que ha comparecido, cuando su nombre aparezca suscribiendo las alegaciones o algún convenio de las partes archivado en el pleito; y dicho abogado será considerado con derecho para continuar como tal hasta el fin del pleito, a menos que otra cosa en contrario aparezca del récord."

Recientemente, el 28 de julio último, en el caso de *Carreras* v. *Pérez*, esta corte interpretando la regla 26, dijo:

"La regla de la Corte citada no se opone a que un abogado sea considerado como tal en casos distintos de los previstos en ella."

Este caso sometido ahora a nuestra consideración es más fuerte que el de *Carreras, supra,* y bien puede sostenerse que en él se cumplió implícitamente con las exigencias de las reglas.

Ambos demandados comparecieron al principio por la misma firma de abogados pero formularon también desde el principio contestaciones por separado y cuando llegó la vista encomendaron su representación cada uno a un abogado. El cambio no pasó inadvertido al demandante. Por su abogado objetó a la forma en que la sustitución se pedía y entonces ocurrió lo que ya conocemos.

El hecho de la sustitución no sólo quedó grabado en la mente de los abogados y en las notas taquigráficas, sí que además en las minutas del secretario una copia de las cuales, de acuerdo con la ley, se unió a los autos, y en la carátula de éstos, haciéndose expresa mención del nuevo abogado en la sentencia misma que se registró y contra la cual se interpuso el recurso.

Hubiera sido mejor que una moción escrita se hubiera presentado, pero el hecho de la sustitución tuvo lugar de modo tan ostensible y claro y de él quedaron tantas constancias en los autos que no puede invocarse su desconocimiento aunque exista la circunstancia favorable de la ausencia del

abogado del demandante que estuvo presente en el acto de la vista.

En el caso de *Moyle* v. *Landers,* 78 Cal. 99, que se invoca finalmente por el apelante, se trataba de un abogado que firmó a nombre de su cliente que estaba muerto, y al promoverse por los herederos la desestimación del recurso, la corte, fundándose en que el abogado notificado tenía conocimiento del fallecimiento y no lo avisó al contrario, de manera que pudiera hacer una notificación correcta, denegó la desestimación de apelación. La corte dijo:

"Sieberst era el abogado de Landers. Después de hacerse el nombramiento de sus representantes personales, continuó actuando como abogado de ellos. Según se demuestra por la declaración jurada, él tenía conocimiento, mientras actuaba como abogado de estos últimos, que por virtud de la orden de la corte ellos habían sido substituidos como demandados en lugar de Landers, y estando presente en la corte no hizo objeción alguna y permaneció en silencio hasta que ya era demasiado tarde para los apelantes notificar y radicar un nuevo escrito. Siendo el abogado de los representantes personales, tenía autoridad para obligarles. No solamente es esto así, sino que se alega directamente, y no se niega que su silencio tenía por objeto el fin avieso de dejar caer el recurso de los apelantes, y que la administradora tomó parte en tal fraude.

"El permitir que esta moción prevalezca bajo tales circunstancias, sería disfrazar la justicia y someterla a que con razón se pudiera reprochar la administración de la ley.

"Nos confrontamos con la alegación levantada por los demandados de que ésta es una cuestión puramente jurisdiccional, que esta corte sólo puede adquirir jurisdicción en las formas dispuestas por la ley y que tal jurisdicción no puede conferírsele por el consentimiento o por la sumisión voluntaria de las partes, y en apoyo de esta contención citan los casos de *Bonds.* vs. *Hickman,* 29 Cal. 462; *Judson* vs. *Love,* 35 Cal. 466; *Shartzer* vs. *Love,* 40 Cal. 96; *Reed* vs. *Allison,* 61 Cal. 465.

"Según ya hemos dicho, debe admitirse que la regla expuesta por estos casos es la verdadera, pero a nuestro juicio ellos no son aplicables al caso que tenemos ante nuestra consideración.

"En ninguno de los casos citados surgió la cuestión de fraude. El apelante sencillamente dejó de dar los pasos necesarios para perfec-

cionar su recurso de apelación, y en uno de dichos casos existía una estipulación al efecto de que la *notificación se había hecho,* pero esto fué contradicho con un certificado del secretario y con una declaración jurada. Creemos que muy bien puede surgir la cuestión de si una estipulación expresa de las partes renunciando a los pasos necesarios para perfeccionar una apelación, o al efecto de que se han dado tales pasos, hecha de buena fe, es o no obligatoria para ellas y si confiere jurisdicción a la corte. (Hayne sobre Nuevos Juicios, sec. 210, pág. 642, y casos citados.)

"Pero ésta no es la cuestión que tenemos ante nos. La cuestión en este caso es si aquellas personas que fraudulentamente han impedido que se haga la notificación del escrito, ocultando hechos materiales y dejando de presentar oportunamente objeción a la jurisdicción de la corte, y que con el fin avieso de impedir la debida notificación de las mismas, han demorado presentar sus objeciones hasta que ya era demasiado tarde para remediar el defecto, no están ahora impedidas de atacar la notificación que se les ha hecho, o la jurisdicción de la corte.

"Bajo las circunstancias de este caso somos de opinión que ahora no debe darse oportunidad a los querellados de atacar la jurisdicción de la corte por no haberse notificado oportunamente el escrito de apelación."

Como puede verse los hechos y las circunstancias son distintos. Aquí el demandante conocía todo lo ocurrido. Quizá el abogado Castro tuvo oportunidad de hacer en tiempo a la parte contraria la aclaración de notificación que luego hizo a la Corte, pero, mientras su palabra jurada no se destruya, debemos creer que la primera oportunidad que tuvo para hacer la aclaración fué después de vencido el término que la ley concedía al apelante para hacer su notificación, y como el apelante conocía los hechos y no podía descansar en la actitud que pudiera asumir la parte contraria, sino en su propia diligencia, no tiene más remedio que estar y pasar por las consecuencias de sus propios actos.

*Por virtud de todo lo expuesto debe declararse con lugar la moción del apelado A. C. Cortés y desestimarse el recurso.*